UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZEKERIYA ISKENDER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-670 (CFD) |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER, | : | |
| SOCIAL SECURITY ADMINISTRATION, | : | |
|     Defendant. | : | |

## RULING ON SOCIAL SECURITY APPEAL

The plaintiff, Zekeriya Iskender, filed this action seeking review of the final decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his applications for a period of disability, disability insurance benefits, and supplemental security income. The plaintiff has filed a motion to reverse the Commissioner's decision [Dkt. #16], and the Commissioner has filed a motion to affirm [Dkt. #20]. For the reasons given below, the plaintiff's motion to reverse is denied, and the Commissioner's motion to affirm is granted.

### I.    Administrative Proceedings

The plaintiff alleged that he became disabled on August 1, 2007, at age 46. [Tr. 105, 113] After his applications for benefits were denied, he requested a hearing before an Administrative Law Judge ("ALJ"). [Tr. 69] ALJ Ronald J. Thomas held a hearing, which consisted of testimony by the plaintiff, on November 17, 2009. [Tr. 17-52] The ALJ then issued his decision on December 16, 2009, finding that the plaintiff was not disabled. [Tr. 4-16]

The ALJ applies a five-step sequential evaluation process to applications for a period of

disability, disability insurance benefits, and supplemental security income. First, the ALJ determines whether the claimant is performing substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If the claimant is not performing such activity, the ALJ proceeds to the second step to determine whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). The impairment must be expected to result in death or must last or be expected to last for a continuous period of at least twelve months. §§ 404.1509 & 416.909. If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment meets or equals an impairment listed in appendix 1 of the applicable regulations. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.

If the claimant does not have a listed impairment, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined as the most that a claimant can do despite the physical and mental limitations that affect what he can do in a work setting. §§ 404.1545(a)(1) & 416.945(a)(1). If the claimant's RFC indicates that he cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of his RFC, age, education, and work experience. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). The claimant is entitled to a period of disability, disability insurance benefits, and supplemental security income if he is unable to perform other such work. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step. Kohler v.

Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

In the present case, the ALJ determined that the plaintiff was not performing substantial gainful activity and had the severe impairments of "obstructive sleep apnea, status post two septal deviation surgeries, bilateral foot pain, chronic back pain, mood disorder and narcissistic traits." [Tr. 9-10] The ALJ then determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. [Tr. 10-11] The ALJ found that the plaintiff had the RFC "to perform medium work . . . however he is limited to a supervised, low stress work environment which is defined as requiring few decisions." [Tr. 11-15] The ALJ determined that the plaintiff could not perform his past relevant work as a waiter but could perform other jobs that exist in significant numbers in the national economy. [Tr. 15-16] The ALJ accordingly concluded that the plaintiff was not disabled. [Tr. 16]

The Commissioner's Decision Review Board selected the plaintiff's claim for review but then notified him on March 23, 2010 that it had failed to complete its review of the ALJ's decision within the required ninety days. [Tr. 1-3] The ALJ's decision thus became final, and the plaintiff then filed the present case.

## II. Standard of Review

Following the denial of a disability insurance claim, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). See also id. §

1383(c)(3) (prescribing same judicial review for denials of supplemental security income claims).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. . . . Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

## III.     Discussion

In the present case, the plaintiff argues that the ALJ improperly (1) assessed the plaintiff's credibility, particularly regarding whether he complied with prescribed treatment, (2) weighed a mental impairment questionnaire, (3) failed to analyze his combination of impairments, and (4) determined his RFC.

### A.     The Plaintiff's Credibility

The plaintiff first argues that the ALJ improperly assessed his credibility. The ALJ is entrusted with the assessment of a witness's credibility because the ALJ has the opportunity to observe the demeanor of the witness. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). As to the credibility of the claimant's complaints of symptoms, the ALJ first determines whether the claimant suffers from an underlying medical impairment that could reasonably be expected to cause the alleged symptoms. 20 C.F.R. § 416.929(b). If so, the ALJ considers the objective medical evidence and other evidence of symptoms, including (1) the

claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; (5) treatment to relieve the symptoms, other than medication; (6) any measures the claimant has used to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions relating to the symptoms. §§ 416.929(c)(2) through (c)(3).

The ALJ must evaluate the claimant's statements about the intensity, persistence, and limiting effects of his symptoms in light of the objective medical evidence and any other evidence. § 416.929(c)(4). The ALJ must consider whether there are any inconsistencies within the claimant's statements or conflicts between the claimant's statements and the evidence. § 416.929(c)(4). When the claimant's statements are internally consistent and consistent with the evidence, there is a strong indication that the claimant is credible. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *5-*6. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4.

In the present case, the ALJ found that the plaintiff failed to comply with some of his prescribed treatment. Based in part on that finding, the ALJ determined that the plaintiff was only partially credible. [Tr. 11, 14] The ALJ explained that the plaintiff refused to use a continuous positive airway pressure machine that was prescribed for his sleep apnea. [Tr. 12] The plaintiff testified at the ALJ hearing that the machine was uncomfortable to use, but he had acknowledged to his therapist that he should have used the machine. [Tr. 26, 485] The plaintiff

said to his therapist: "I know I'm thick-headed." [Tr. 485] The plaintiff also failed to follow other recommendations made by his therapist. The therapist reported that she "demonstrated ways [for the plaintiff] to communicate [with his wife] . . . . [The plaintiff was] still very resistant . . . ." [Tr. 420] Although the plaintiff reported feeling "burned out" by his part-time job as a waiter, he did not "take [the] therapist's recommendation to start looking at other jobs just to see what's out there." [Tr. 456] The plaintiff also "has not tried the relaxation exercises suggested by [the] therapist." [Tr. 457]

The ALJ cited medical records indicating that the plaintiff did not want to take Percocet for his back pain on the ground that he deemed the drug to be "dangerous." [Tr. 304] He skipped a scheduled magnetic resonance imaging (MRI) appointment for evaluation of back pain. [Tr. 304] He testified at the ALJ hearing that his back pain "comes and goes" and that it is "not continuous": "I guess it depends on the weather, sometimes it get[s] bad, sometimes it depends on the activities . . . ." [Tr. 25] Despite his alleged physical pain and mental impairments, he testified that he was working as a waiter three hours per day, four days per week. [Tr. 34]

As to the treatments that the plaintiff did not follow, he argues that they would have been ineffective even if he had pursued them, and thus the ALJ should not have relied on that information in determining credibility. However, it is impossible to know whether the plaintiff would have benefitted from the treatments that he declined to pursue. The plaintiff gave reasons for some of his decisions, such as finding the ventilation machine uncomfortable and Percocet dangerous, but the ALJ was free to evaluate those reasons in reaching an overall credibility finding. The ALJ did not limit his credibility determination to the plaintiff's compliance with recommended treatment. The ALJ also considered the plaintiff's testimony of occasional pain

and continued part-time work as a waiter despite his impairments. Furthermore, the ALJ found that the medical evidence did not support the extent of the plaintiff's claimed symptoms. In light of all this information, the ALJ concluded that the plaintiff was only partially credible. The Court determines that the ALJ did not make any factual or legal errors in his analysis and that his credibility finding was supported by substantial evidence.

B. The Mental Impairment Questionnaire

The plaintiff next challenges the ALJ's evaluation of a mental impairment questionnaire, arguing that the ALJ failed to follow the treating physician rule. That rule generally directs the ALJ to "give more weight to opinions from [the plaintiff's] treating sources . . . . If [the ALJ] find[s] that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight. When [the ALJ does] not give the treating source's opinion controlling weight, [the ALJ considers several] factors . . . in determining the weight to give the opinion." 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). Those factors are (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) whether the opinion is supported by relevant evidence such as medical signs and laboratory findings, (4) whether the opinion is consistent with the entire record, (5) whether the treating source is a specialist in the relevant area, and (6) any other factors that support or contradict the opinion. §§ 404.1527(d)(2)(i) through (d)(6) & 416.927(d)(2)(i) through (d)(6).

The plaintiff contends that the ALJ improperly evaluated the mental impairment questionnaire completed by Sheila McLaughlin, a licensed professional counselor, and signed by

the plaintiff's treating psychiatrist, Dr. Nathalie Lara, on August 12, 2009. [Tr. 543-46] In that questionnaire, McLaughlin indicated that the plaintiff "suffers from depressed mood most days along with decreased energy and motivation. [He] also has mild agoraphobic symptoms. [He] also has daily symptoms of irritability/frustration which affect his ability to work for extended periods of time." [Tr. 545] McLaughlin explained that the plaintiff was not a malingerer, that his impairments would cause him to be absent from work more than three times per month, and that he would have difficulty working at a regular job on a sustained basis. [Tr. 544, 545] McLaughlin reported that the plaintiff was markedly restricted in activities of daily living; experienced marked difficulties in maintaining social functioning; was often deficient in concentration, persistence, or pace; and experienced repeated episodes of decompensation in work settings. [Tr. 546] McLaughlin assigned the plaintiff a global assessment of functioning score of 55, reflecting moderate symptoms or difficulties in functioning. [Tr. 543] The ALJ gave "lesser weight" to the questionnaire on the ground that it was inconsistent with the medical evidence, including Dr. Lara's clinical findings. [Tr. 13-14]

Examining those clinical findings, the Court notes that they were made primarily by McLaughlin and at times signed by Dr. Lara. The findings present a mixed account of the plaintiff's functional abilities, with significant evidence that he was not as limited as the questionnaire suggested. On July 7, 2009, just over one month before McLaughlin completed the questionnaire, the plaintiff "presented as anxious and sad with constricted affect" but "left [the] session seemingly with brighter mood . . . ." [Tr. 416] On May 12, 2009, McLaughlin and Dr. Lara wrote in a treatment plan review that the plaintiff "continues with a negative outlook about his current life situation and future. He also continues reporting general unhappiness with his

current job and future prospects. However, at times, [he] is able to cite the positives in his life — more specifically, his family. . . . [He] has improved in his ability to manage his anger and be more patient — especially in the work setting . . . ." [Tr. 411] McLaughlin and Dr. Lara also made similar comments in their previous treatment plan review three months earlier, on February 9, 2009. [Tr. 413]

On April 28, 2009, McLaughlin explained that the plaintiff "presented as euthymic with appropriate affect" and that his "[m]ood overall has remained stable without any major depressive episodes." [Tr. 420] McLaughlin noted that the plaintiff was "overwhelmed with appointments, errands, work[ing part-time as a waiter] and caring for kids, etc." because his wife did not want to learn to drive. [Tr. 420] On March 17, 2009, the plaintiff's "[m]ood [was] fluctuating, but [he] has been working to challenge negative thoughts and using his faith/religion to get him through challenges." [Tr. 431] McLaughlin indicated on January 26, 2009 that "after talking about something positive, [the plaintiff's] mood and affect brightened." [Tr. 434] The plaintiff exhibited similarly positive responses in mood on September 9, 16, and December 2, 2008. [Tr. 456, 484, 485] Another therapist, Marjorie Lafex, noted on May 13, 2008 that the plaintiff had "more relaxed body language and brighter affect these past three weeks . . . ." [Tr. 494]

As the foregoing summary of the clinical progress notes shows, the plaintiff displayed a positive mood on many occasions. Although he was overwhelmed, he nonetheless performed many activities of daily living, including working part-time as a waiter, caring for his children, driving, going to appointments, and running errands. His ability to perform those activities stands in contrast to McLaughlin's questionnaire, which stated that the plaintiff was markedly

-9-

restricted in activities of daily living. Therefore, the questionnaire was inconsistent with the clinical findings. The questionnaire was also inconsistent with other medical evidence, such as the assessments of two medical consultants, Dr. Gregory Hanson and Dr. Timothy Schumacher, who did not find that the plaintiff had any marked limitations. [Tr. 264-81, 334-51] Due to those inconsistencies, it was proper for the ALJ to assign "lesser weight" to the questionnaire, and he did not violate the treating physician rule. [Tr. 14]

### C. The Plaintiff's Combination of Impairments

The plaintiff next argues that the ALJ failed to analyze his combination of impairments. "[T]he combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Burgin v. Astrue, 348 Fed. Appx. 646, 647 (2d Cir. 2009). The plaintiff cites Small v. Astrue, Docket No. 3:08-cv-169 (AWT) (DFM), slip op. at 27-28 (D. Conn. Sept. 4, 2009), in which the court determined that the ALJ had erred in failing to consider evidence from treating physicians and medical consultants showing a relationship between the claimant's physical and mental conditions. Id. at 28. The plaintiff also cites Parker v. Astrue, 597 F.3d 920 (7th Cir. 2010), in which the court ruled that the ALJ should have discussed the effect of asthma and incontinence on the claimant's chronic pelvic pain. The Parker court explained that "[d]ifficulty in breathing and abnormal frequency of urination requiring constant trips to the bathroom are likely to place great strain on a person who is in constant pain and cannot walk without the aid of a cane . . . ." Id. at 923.

The present case is factually similar to Small and Parker because there is evidence of a relationship between the plaintiff's physical and mental conditions. McLaughlin stated in her

questionnaire that the plaintiff's psychiatric condition exacerbated his physical symptoms, including pain: "[He] has difficulty breathing/tightness in [his] chest due to anxiety. Also, depression [is] exacerbating his back pain." [Tr. 545] McLaughlin's clinical progress notes were consistent in this respect because they suggested a relationship between the plaintiff's physical and mental impairments. For example, on June 9, 2009, McLaughlin wrote that the plaintiff "continues with heaviness in [his] chest and difficulty breathing, taking deep breaths during [the] session. [He s]eems resistant to the idea that it could be anxiety related." [Tr. 418]

In examining the plaintiff's combination of impairments, the ALJ stated that he had considered all of the plaintiff's symptoms and that he did not have a combination of impairments that met or medically equaled any of the listed impairments. [Tr. 10, 11] The ALJ also explained that "it was evident from [the plaintiff's] treating sources' notes that when he followed prescribed treatment regimens, [his] depressive and anxiety symptoms [decreased] and [his] related conditions including his physical functional capacity increased . . . ." [Tr. 14] The ALJ therefore showed that he recognized a relationship between the plaintiff's physical and mental impairments and that he considered the evidence linking those impairments together. Although the ALJ's discussion was brief, his explicit acknowledgment of the issue and the relevant evidence constituted an adequate analysis of the plaintiff's combination of impairments.

    D.    <u>The Plaintiff's RFC</u>

The plaintiff's last argument is that the ALJ improperly determined the plaintiff's RFC. This plaintiff contends that he cannot tolerate "authoritarian" supervision at work, that his impairments prevent him from working, and that the ALJ should have received testimony from a vocational expert. The ALJ found that the plaintiff had the RFC "to perform medium work . . .

however he is limited to a supervised, low stress work environment which is defined as requiring few decisions." [Tr. 11-15] The ALJ did not prescribe "authoritarian" supervision; he specified a "low stress work environment." His conclusion that the plaintiff was able to work was grounded in the medical records and opinions discussed throughout this opinion. Finally, a vocational expert was not needed because the ALJ found that the limitations affecting the plaintiff's ability to perform medium work had little impact on the number of jobs available to him. Therefore, the ALJ properly relied on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00 et seq., rather than a vocational expert. See Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986). The plaintiff's brief arguments regarding his RFC are unavailing.

## IV. Conclusion

The plaintiff's motion to reverse and to remand [Dkt. #16] is DENIED, and the Commissioner's motion to affirm [Dkt. #20] is GRANTED. The Clerk is directed to close this case.

**SO ORDERED** this 27th day of September 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE